Thank you, Your Honors, and may it please the Court, Brian Matsui on behalf of the Patent Owner, All-of-Innovation. There are two errors in the Board's decision. First, the Board misconstrued the term manual guiding. The 427 patent consistently distinguishes between manually doing something and kinematically doing something, that is, doing something with mechanical assistance. The Board's decision holding that manual guiding can include kinematic mechanisms eviscerated that distinction and violates this Court's basic rule that different terms are presumed to have different meanings. Do you think there's a difference between guiding and supporting? I don't think that there's really a difference. There's not a material difference that I can think of between kinematic guiding and guiding with kinematic support, and there's certainly nothing in the record here that would sort of illuminate what that distinction is. And the reason why is because this case was litigated to the Board and was decided to the Board based upon the distinction between manually doing something on the one hand and kinematically doing something on the other hand. Basically, the whole point of the invention here was taking a handheld tool without the type of mechanical assistance that existed in the prior art, and then not having the type of boundaries that would be there with mechanical arms that provided a support or assistance, because instead the power to the tool would be turned off before the surgeon could move the laser, the cutter, or the drill outside the area which is supposed to be cut. Well, I guess my understanding of the term manually guiding, manually guiding the tool, the cutting tool, the effector, is to move the tool by hand. That's not something that you have a dispute with. Is that right? I would dispute that, Your Honor. It's moving the tool by hand without moving restrictions. That latter part is important because that was key to the invention here. The inventor was taking basically two disparate pre-existing technologies. I guess what if I take this nameplate and I'm moving it by hand, and then I move it to right here, and then now it's supported by this counter. Is this counter somehow defeating my manual movement of the nameplate? No, Your Honor. In that situation... It's providing support. It's just propping up the nameplate in the place that I last left it after I let go of the nameplate. Is that right? Certainly, Your Honor. No. What you did is when you moved your nameplate and then you placed it on the counter, there was not any sort of mechanical assistance at all for you to place it down. Then when you placed it down, then it's in its final position. Our position on doing something kinematically is dealing with something that's assisting the surgeon or it's providing additional guidance for the physician. That's well supported in the record in this case. When I'm thinking about Mushavek's mechanical arm, it's not actually, as I understand it, in moving the cutting tool from position A to position B, but as soon as the surgeon lets go of the tool at position B, then the mechanical arm just keeps the tool right there at position B without the tool just falling to the ground. Is that a fair understanding of Mushavek? It is in part, Your Honor. I mean, Mushavek in that situation is providing friction to prevent the tool from falling down, which means that it's providing force. It's providing force to keep the tool in position. I guess what I'm wondering is why is that somehow contributing to the movement of the tool by hand, by the hand of man or hand of person? Well, Your Honor, a couple of points. The first is that the Mushavek arm requires additional force from the surgeon due to the friction in it. That's clear at Appendix 1095, 1863, and 1132. These are all situations which explain that moving the Mushavek arm requires additional force, and it also has restraints. It says at Appendix 1863, Mushavek involves a heavy mechanical arm that restricts the surgical range of motion to improve safety. And so it's restricting the areas that the physician can move the tool, the cutting tool, to improve safety. So that's the situation. If I think of manual guiding as something that is contributing to the movement of the position of the tool from position X to position Y, if I think of the term that way, then I don't think Mushavek's mechanical arm is contributing at all to the movement of that tool from position X to position Y. Is that right? It still is, Your Honor, because when it's holding the tool in air, it's providing force to assist the physician in keeping the tool in air as it's moving the tool from position X to Y. If you were not to have the Mushavek arm, the physician would have to hold the tool in place, and so additional force would be required. That's what's understood by kinematic here. But, Your Honor, if I could just address an additional point on this, which I think it's important to take a step back, because even the kinematic support that you might be describing is distinguished from doing something manually. For example, if we look at Appendix 45 at Column 12 at Line 22, the specification says, the effector 2 can be, for example, a cutter, a drill, or a laser, which is guided manually via a corresponding handpiece, but can also be kinematically supported, braked, damped, or driven. The patent right there is distinguishing between manual guiding and guiding with kinematic support, but can also be indicates that that's an alternative. There are different ways in which you can do it. You can either manually guide it on the one hand, or you can guide it with kinematic support. Even if we say that support is something that is not necessarily affecting movement as much as I believe it is, I think that the language of the patent right here makes clear that kinematic support is excluded from manual guiding. That's not the only place in this patent where it distinguishes between manually doing something and doing it with kinematic support. At Column 13 on the next page, at Appendix 46, at Line 17, it says, to prevent accidental removal of tissue by the manual or kinematically supported arrangement and guidance. That right there, again, the patent is distinguishing between doing it manually and doing it with kinematic support. Even if we're going to draw a distinction between kinematic guiding and kinematic support, kinematic support was clearly intended to be excluded from manual guiding. Both Column 12 and Column 13 make that clear. I would also note that Claim 26 also draws a distinction between these two concepts. That's at Appendix 49, where Claim 26 says, using position information of the effector for at least one of manually and kinematically arranging and guiding. Kinematically arranging is a type of kinematic support. By saying at least one of, the patent is making clear that you can have either manually doing it or you can have kinematically doing it. There's a distinction that's being drawn here. I think that, again, just to step back to where I was in the very beginning, the whole point of this invention was to not have the mechanical assistance that existed in the prior art. It was to use a handheld tool. The way that the inventor made that clear was by using the term manual guiding. That's why you find the distinction between doing something manually and doing something kinematically, or doing something robotically, or doing something with mechanical assistance. Your Honor, to your point about there potentially are hand movements when there is something that is being supported, if we turn to Column 1 of the patent, it discusses manually moving a tool in the context of robot-assisted surgery that you can have robotic-assisted surgery where the surgeon still might manually have the opportunity to make some movements by hand. No one believed that that fell within the scope of the claim. Merely the fact that there's some movement by hand doesn't mean that that falls within the scope of manually guiding in this patent. Once we take out kinematic support, there's simply no basis at all for the Board's decision. Bluebelt's expert in this case conceded that the Musibek arm is a type of kinematic support. So that basically dictates that the claim construction issue would be dispositive on this appeal. I would like to also mention that we do have a contingent motion to amend. It was decided before Aqua Products. But didn't the Board respond to the proposed narrowing of the claims in the contingent motion? Or did you feel that that was inadequately explored in this interaction? It was not adequate, Your Honor. The burden was clearly placed upon us in our motion to amend. This case was decided before Aqua Products. But they did say that even your proposed narrowing was subject to prior art showing the free-hand motion. The Board did do that. But what it did is it made us prove non-obviousness and said that our evidence wasn't persuasive before requiring the petitioner to prove obviousness over the amended claims. So didn't the Board make specific factual findings about why your amendment would still be obvious? And wasn't it based at least in part on the petitioner's arguments? I mean, this isn't a case where there was no petitioner and it dropped out and the Board just said, oh, you don't prove it without going through the details. They went through the specific references and made factual findings at least in part based on the petitioner's argument. Why isn't that just harmless error? Well, I think the question for harmless error would be whether or not it affected our substantial rights. And I think that clearly this did. And if we look at the Board's decision... The Board makes the factual findings and determines that the scope of these prior art references, that there was some motivation to combine all of that kind of stuff and reaches the invalidity conclusion. Why isn't that harmless error, even if they use the wrong language post SOC or products? Because, Your Honor, the factual findings to the extent that they made them in this case were saying that we did not prove that there was no motivation. And that is the context in which the case was decided. Didn't they go further than that? I thought they did. It suggested here are the reasons you would combine this. So I think that one of the good examples to take is at Appendix 30, where the Board's reasonable expectation of success analysis starts at the top. And it just says, however, our reference is prior art for all that it is to protect. And then it goes down in the middle of the paragraph and says, Pat Noerer and Dr. Howe have not explained sufficiently why the pantographic features. And so it's basically saying we haven't explained why there wouldn't be a reasonable expectation of success. The same thing is true with respect to motivation to combine, where the Board makes clear that it says we do not find this argument persuasive of non-obviousness, which means that we had to prove non-obviousness. Well, that's always going to be the case in a pre-UCC or products case, because that was the standard they were applying. But that doesn't foreclose a harmless error analysis, does it? At 829, the Board said, quote, we agree such a combination would be desirable. And then it explains why, even if there's some loss of accuracy with using Milken's freehand system, there's certain advantages to removing this large, unwieldy mechanical arm from the process, since it's no longer needed because you're not using the pantograph system anymore. So I guess from my point of view, I'm wondering if the Board, if we were to read the Board's decision as saying we're denying this motion to amend, you didn't meet your burden of proving it's patentable, because we've looked at all the references, and we see why it would be obvious to combine all these references to render the claimed invention obvious. Under that circumstance, wouldn't you agree that would be harmless error, that they stated or misstated the burden of proof? No, Your Honor, I think that once the burden has been applied in this manner, it's impossible to sort of disentangle how the case was decided, because what the Board did is it... So you're essentially saying that harmless error can't be applied to an aquaproducts type issue? No, Your Honor, I'm not saying that. I think that... Well, let me give you a hypothetical then. Let's suppose this is a pre-aquaproducts case. The Board used its prior standard, which we know is incorrect, but went through and said, here are the prior art references. We make these factual findings. The prior art discloses all of these claimed elements. There's substantial evidence for that. The prior art discloses a motivation to combine. There's substantial evidence for that. Wouldn't that conclusion, even those factual conclusions, all supported by substantial evidence, be sufficient to sustain a pre-aquaproducts decision, even if the Board used the wrong burden initially? They made independent factual findings supporting everything you need to show obviousness. Isn't that a harmless error? I think that if the Board made factual findings and addressed the petitioner's arguments and looked at the prior art references and said that there was a showing of obviousness and then addressed the... Let me just make it clear. The petitioner did make arguments here, right? This isn't a case where the petitioner didn't put anything forth in response. The petitioner made arguments, did it not? The petitioner did make arguments. That is correct. There's expert testimony from the petitioner on these points? Yes. That's another point, Your Honor, which before aquaproducts in our opening brief makes clear that there was not adequate explanation here as to both the motivation and the reasonable expectation of success. But setting that aside, Your Honor, it's clear here what happened was the Board analyzed our arguments first and required us to prove non-obviousness. When the Board's decision is looked at in that lens, it's impossible to disentangle the burden question when we only have to show that it affected a substantial right under harmless error. I don't think that this would be a good first case for this Court to say that the aquaproducts error was a harmless error. I'm not aware of any case in which the Board's decision to place the burden on the patent owner hasn't gone back to have additional analysis as to the resolution of that burden. I don't think that this would be a good first case. Okay. Let's hear from the office and we'll save you rebuttal time. Good morning, Your Honors. May it please the Court. I'd like to start off by addressing a couple of points with the manual evaluation. It's a claim construction issue that is driven by the intrinsic evidence. Let's talk about the context of this proposed amendment and whether, had it been fully explored, whether it would have resolved the issues that we're debating otherwise. Okay. So you're talking about the proposed contingent amended claims? Yes. Yeah. I think the Board actually did a good job of addressing the merits of the proposed amended claims. They actually say that at APPX 23, when they were first looking at the procedural arguments that the petitioner had raised, how the burden was on the patent owner to show that the claims had adequate written description support under Section 112, the Board actually said it wasn't going to address those procedural issues and it jumped into the merits of the claims. From 823 to 830, they did a rather fulsome obviousness analysis that looked at the prior art. The three different references disclosed where the limitations were met. It looked at the new reference to Mel Kent, explained how it would be obvious to use the freehand cutting tool of the Mel Kent device and incorporate it into the Mushabox system to replace Mushabox's mechanical arm, and explained how there would be a reason to do that, to free up the freedom of the surgeon's arm, so there would be an expectation of success because these freehand tools had been used in prior art systems where you were cutting into hard tissue. I think there's factual findings that are supported by substantial evidence. I think their statement at the very end on 830 where they said, therefore, the patent owner has failed to meet their burden, would just be a harmless error. I think if you just change that last sentence to, therefore, petitioner has met their burden of proving the unpatentability, I think you could have that exact same analysis. The board did address, it was fairly thorough, it addressed both petitioner's arguments and patent owner's arguments and explained why it agreed with petitioner and why it was unpersuaded by patent owner's arguments. What I'm thinking about, somewheres in the history and the genesis of the American Vence Act, it was contemplated that when, in fact, the applicant or the patentee has something that's different and has made a contribution, there is an opportunity to sort that out in this procedure. Instead, what we saw in AQUA products as to how fully remedied it, time will tell, that there was a reluctance to implement that policy, that philosophy. And so that responding to the contingent emotion to amend was helpful. It was helpful, but the real question is, was it sufficient? Was it complete? Should this be now restored and be fully applied? Yeah. I understand the question and I believe in this case that there was a thorough obviousness analysis on the merits. I know there are other cases where contingent motions to amend were denied on a procedural basis where a patent owner hadn't argued extensively on the merits. But in this case, I think the board did a good job of addressing the merits, addressing both petitioner's arguments and patent owner's arguments, and they made significant factual findings to support their conclusions with regard to reason to combine and reasonable expectation of success. Okay. Proceed. Okay. Just quickly turning to the manually guiding limitation, there's just three points I'd like to make. If you focus on the intrinsic evidence, you look at the claims, the specification and the prosecution history. Here you have the claim limitation manual guiding. It doesn't include a negative limitation that excludes moving restrictions. If you look at the specification at column 12, and this is at APPX 45, the specification is very clear in lines 21 to 25. It actually says that the effector can be guided manually via a corresponding handpiece one, but can also be kinematically supported. I think that's a very clear disclosure that you can manually guide the device and you can also have some support for your arm. As you pointed out, Judge Chen, just because you have some support for your arm, the effector is actually being moved by hand still. Then, in the prosecution history, the claims before they included the manually guiding limitation, they were rejected over a prior reference to Glassman, which was a robotic system. They amended the claims to include the manually guiding limitation and stated in the prosecution history that the claims are allowable because they manually guide the effector without robotic control. They didn't make a disclaimer as to kinematic support. I think if you look at the extrinsic evidence, it all supports the board's construction. If there are no further questions, I will yield the rest of my time. Thank you. Thank you, Mr. McBride. Thank you, Your Honor. I just would like to make a couple points. I'd like to first turn back to manual guiding because I think that it's important and that ultimately should just resolve this case where I think that this is a situation where the patent makes clear that there is a distinction between doing something manually and doing something kinematically. If the court were to look at Appendix 41, for example, at Column 3, it makes clear that there is a distinction between manual drilling at Line 22 with navigated position information orientation and, on the other hand, drilling with a kinematic mechanism, e.g. a robot. And Bluebelt's expert testified at Appendix 2043 and 2044 that another type of kinematic mechanism, another type of kinematic mechanism which would be distinguished from doing it manually, would be a support arm. And that's at Appendix 2043 and 2044. So the patent is making very clear here that there's a distinction between doing something manually and doing something with some sort of mechanical assistance, whether or not it's guidance or support. So I don't think that it's possible to say that manual guiding includes the type of mechanical assistance that the Mushebek arm would, which both restricts the movement of the surgeon and provides assistance for the surgeon's movement. And then to respond to my friend on the other side's reference to Column 12 at Appendix 45, it says, can be guided manually via corresponding handpiece, but can also be kinematically supported, break, damped, or driven, but can also be, has to mean it's an alternative because these are comprising claims. There are additional steps that could occur. And so one alternative would be to have manual guiding, which is required by Claim 1, but an additional step could be having kinematic support. And I note it says break, damped, or driven. And driven is active. That would be something that's motorized. But under the director's interpretation, that means that motorized, something that's kinematically driven, would fall within the scope of manual guiding. And that doesn't make any sense at all. Now, lastly, on the motion to amend, Your Honor, I would just note that the motivation analysis here, when the additional, the third reference, Melkint, was added, there's no motivation to combine analysis with respect to Mushebek, Klimek, and Melkint. There's just some discussion of Melkint alone. Under this court's decision in Magnum Oil, that's not permissible. You can't just take the third reference and say, now we're going to combine it with those other two without doing an obvious motivation to combine analysis. There's a distinction. There was an error by them not analyzing the combination of the first two references, but that was what the original claims that were petitioned for were. They explained why those were invalid based on those two, the combination of those two. So then when you added an extra limitation, that's where the third limitation comes in, or third reference comes in. I don't understand why there was something wrong with analyzing just whether it'd be obvious to combine the third reference to the first two references when they already concluded in the earlier part of the decision whether it'd be obvious to combine the first two references. Your Honor, I think a motivation to combine analysis requires an analysis of all three references to see if there'd be a motivation to combine them. It can't be a situation where an additional reference is just added in and it's assumed that given the earlier analysis that there would be a motivation to add that third reference into the combination. I see I have no further time, but we would ask the court to take it into submission.